In re LEVIN.

(District Court, S. D. New York. April, 1909.)

1. BANKRUPTCY (§ 159*)—PREFERENCES—SECURED CLAIMS—PLEDGES.

Where a bankrupt obtained advancements on account of goods alleged to have been sold to merchants in distant cities, and thereafter obtained advances on account of goods falsely represented to have been sold, agreeing that claimants should be secured for such advances by the goods themselves, such agreement did not constitute an unlawful preference, but entitled claimants to retain the proceeds of the goods and to have their claim allowed for the deficiency.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 247; Dec. Dig. § 159.*]

2. BANKRUPTCY (§ 342½*)—FINDING BY REFEREE—REVIEW.

A finding of fact by a referee as to the existence of a contract between claimant and the bankrupt ought not to be set aside by the court on a petition for review, unless prejudice or ill will is apparent or there is a total lack of evidence to support the finding.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 530; Dec. Dig. § 342½.*]

3. ASSIGNMENTS (§ 78*)—SECURITIES—REMEDY.

The assignment of a debt carries with it every remedy and security available by the assignor as incident thereto, though they are not specially named in the assignment.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 145; Dec. Dig. § 78.*]

4. ASSIGNMENTS (§ 24*)—CLAIMS ASSIGNABLE—TORT.

The cause of action for a mere tort is not assignable.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 42 46; Dec. Dig. § 24.*]

5. ASSIGNMENTS (§ 76*)—CLAIMS ASSIGNABLE—ASSIGNMENT OF EVIDENCE OF DEBT.

In the absence of an agreement, express or implied, to transfer property or to create a lien thereon, the mere assignment of the evidence of a debt will not transfer the incidents thereto, unless the debt itself is assigned.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 143; Dec. Dig. § 76.*]

6. CARRIERS (§ 56*)—BILL OF LADING—TRANSFER.

Delivery of a bill of lading without written indorsement, if made with the intention of passing title to the goods, is sufficient therefor.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 168; Dec. Dig. § 56.*]

In the matter of Louis Levin, bankrupt. On petition by the bankrupt's trustee for review of the referee's allowance of a claim of M. L. & C. Ernst. Affirmed.

The following is the opinion of the referee:

DEXTER, Referee. Messrs. M. L. & C. Ernst were bankers in the city of New York, whose business consisted mainly of making loans to merchants on their accounts receivable. The bankers did not make a practice of loaning on warehouse receipts or goods in store. On June 10, 1903, one Rosenthal, a commission merchant and broker, introduced to the bankers Louis Levin, with whom they had had no previous acquaintance or dealings, for the purpose of negotiating loans from them on notes of Levin secured by assignment of accounts, among others an account of Weinstock, Lubin & Co., merchants in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

San Francisco. Mr. Ernst said he was willing to loan on the transfer of the accounts as soon as he could "get acknowledgments," or have the accounts properly verified; but on Levin's urging an immediate advance, and stating that "we will pledge the goods and the accounts," Rosenthal was instructed to verify the orders and to see that the goods were about to be shipped, and to report to Ernst, which was done. The Weinstock order appeared to be regular, and the goods in cases were closed and marked in Rosenthal's presence, ready for shipment, and the first loan of $1,825 was made. The itemized account and assignment were delivered to the bankers, together with a bill of lading in the usual form, as well as the truckman's receipt. On June 11th a similar transaction occurred with reference to an account of one Filene, in Boston, and $450 was advanced. Both of these accounts represented bona fide orders for goods, and were legitimate, although sundry reclaims were subsequently made by the consignees by reason of alleged shortages, overbilling, and trade discounts. There was subsequently collected by the bankers on the Filene account the sum of $471.47, and on the Weinstock account $1,475.25—total, $1,496.72—which was duly credited to the Levin account.

Having thus won the confidence of the bankers, Levin proceeded to work a barefaced fraud on them. At various dates between June 15th and June 25th he assigned sundry accounts purporting to represent goods sold to merchants in distant cities and received advances on similar terms, amounting to $6,508. It does not appear that there was any further examination of the goods to be shipped, or any further conversation as to security; but in each instance, before the advance was made, bills of lading in the usual form covering the shipment of goods to the consignee mentioned in the account were delivered by Levin or his representatives to the bankers, together with the truckman's receipt showing the delivery of the goods for shipment. All of these last-mentioned accounts proved entirely fictitious and were repudiated by the consignees, as the goods had never been ordered. Before the discovery of the fraud Levin had absconded, and a petition in bankruptcy was filed against him on June 29, 1903. The bankers, after correspondence with the various consignees, were convinced of the fictitious nature of the accounts, and proceeded to realize on the goods to the best advantage possible. Some goods were sold to the consignees at half price to close out the matter and save freight charges if reshipped. In other instances the goods were returned to the bankers and disposed of by them as well as they were able. In this way they recouped their loss to the extent of $3,992.14, having paid out in freight, telegrams, and other expenses $279.04. A proof of claim was filed April 22, 1904, for $3,462.58. The trustee considers the amount of the claim to be correct, but objects to its allowance on the ground that the taking and retention of the goods above mentioned constituted an unlawful preference to the claimants, which they should surrender before the claim can be allowed.

It is a well-settled rule of law that the assignment of a debt carries with it every remedy and security for such debt available by the assignor as incident thereto, although they are not specially named in the instrument of assignment. Am. & Eng. Ency. Law, vol. 2, 1084; Craig v. Parkis, 40 N. Y. 181, 100 Am. Dec. 469; Rose v. Baker, 13 Barb. (N. Y.) 230. But it is with much force urged by the learned counsel for the trustee that, conceding the rule to be as above stated in cases where there was a bona fide sale and a valid claim capable of assignment, it can have no application to this case, where the sales were entirely fictitious and there never was a valid and assignable account. He cites as controlling the opinion of Judge Hough in the case of Pratt v. Columbia Bank, hereto annexed, where the same bankruptcy frauds were under consideration. This opinion is supplementary to the main decision reported in 157 Fed. 137, 18 Am. Bankr. Rep. 406, and was rendered on the settlement of the decree in that case. Judge Hough says, with relation to the Levin frauds: "The bankrupt could not create an equity in favor of the Columbia Bank by working a fraud on the bank and his other creditors. It is an ineradicable objection to this allowance that there never was any such account."

This decision concisely states the law as I understand it, and would be conclusive of this proceeding, if the facts were the same. Of course, a chose in action for a mere tort is not assignable, and an attempted assignment is void, and confers no rights on the assignee. People v. Tioga Com. Pleas, 19 Wend. (N. Y.) 73; Pulver v. Harris, 52 N. Y. 73. And it is true that in the absence of

an agreement, express or implied, to transfer property or to create a lien thereon, the mere assignment of the evidence of a debt will not transfer the incidents thereto, unless the debt itself is assigned. Battle v. Coit, 26 N. Y. 404.

If the Ernst firm held only fictitious accounts as security, it may be conceded that they could not claim the goods shipped merely in furtherance of the fraud and to deceive the bankers. But I find, on a careful examination of the testimony, that there was an oral agreement between Levin and Ernst at the first interview to secure the bankers by the goods themselves and to subrogate the bankers to all the rights therein which Levin had. The delivery of the bills of lading without a written indorsement, if made with the intention of passing the title to the goods, is sufficient to effect that purpose. Rochester Bank v. Jones, 4 N. Y. 497, 55 Am. Dec. 290; Marine Bank v. Wright, 46 Barb. (N. Y.) 45; Merchants' Bank v. Railroad Co., 69 N. Y. 376. The intention of the parties will be enforced in equity, and Levin's debt to the bankers, therefore, stands as a secured, and not as a preferred, claim. In re Busby (D. C.) 124 Fed. 469, 10 Am. Bankr. Rep. 650.

The lien thus created having been accepted in good faith, and not in contemplation of or in fraud upon the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), and for a present consideration, it is not affected by the act (section 67d), and hence the claimants are entitled to retain the proceeds of the goods sold by them, and to have their claim allowed for the deficiency.

So ordered.

Julius Henry Cohen, for petitioner.

Ernst, Lowenstein & Cane (Bernard M. L. Ernst, of counsel), for claimants.

HOUGH, District Judge. The interesting nature of the question suggested in argument has led me to carefully consider the evidence. The referee has found, as matter of fact, that there was an agreement between Levin and Ernst to secure the Ernsts "by the goods themselves." If there was such an agreement, it should be carried out in equity, no matter how inappropriate were the means adopted for putting the agreement in force, so long as such means were not unlawful. This finding of fact is at the bottom of the whole case, and without disregarding it the referee's decision cannot be upset.

It is not and cannot be denied that there is evidence to support this finding, and such evidence was given before the referee and presumably in his hearing. It is sufficient to refer to the testimony of M. L. Ernst. This case is one, in my judgment, calling for the application of what I believe to be the most salutary rule of litigation, viz., that a finding of fact made by a trial court ought never to be disturbed or upset, unless prejudice or ill will is apparent or a total lack of evidence to support the finding is demonstrated. By adopting the referee's finding of fact I think the case is disposed of.

The petition of review is dismissed.